IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

SKYLOR G. WILKERSON, )
 )
        Plaintiff, )
 )
v. ) Case No. CIV-09-245-FHS
 )
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
 )
        Defendant. )

**REPORT AND RECOMMENDATION**

Plaintiff Skylor G. Wilkerson (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on July 17, 1987 and was 21 years old at the time of the ALJ's decision. Claimant completed her high school education but attended special education classes due to learning disabilities. Claimant has no past relevant work. Claimant

3

alleges an inability to work beginning December 31, 1997 due to borderline intellectual functioning, learning disorder, and attention deficit hyperactivity disorder.

**Procedural History**

On May 31, 2006, Claimant filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, et seq.) of the Social Security Act and child's insurance benefits based on disability. Claimant's applications were denied initially and upon reconsideration. On February 20, 2008, an administrative hearing were held before ALJ Deborah Rose in Ada, Oklahoma. On April 29, 2008, the ALJ issued an unfavorable decision on Claimant's applications. On March 16, 2009, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform at all exertional levels with limitations.

4

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in failing to: (1) adequately develop the record; (2) arrive at a proper RFC determination; and (3) ask appropriate hypothetical questions of the vocational expert.

**Duty to Develop the Record**

On August 5, 2003, Claimant's mother sent Claimant for a social/emotional assessment to complete her cognitive assessment for school. Claimant saw Dr. Darwin Moore. He informed Claimant's mother that a "piecemeal assessment" without complete testing would border on being unethical. He, therefore, recommended that they return for a complete assessment. (Tr. 250). Claimant underwent counseling when her GAF was scored at between 53 and 60. (Tr. 248, 253, 255, 257).

On January 5, 2004, Donna Wimmer-Steves, L.P.C., the school counselor, provided a psychological evaluation of Claimant performed in 2003. The testing showed Claimant with a Total Standard I.Q. Score of 72. (Tr. 283). Claimant demonstrated anxiety and depressive symptoms through testing. (Tr. 282). Testing also indicated Claimant qualified for ADHD. (Tr. 283-84). Ms. Wimmer-Steves recommended Claimant be evaluated by a pediatric psychiatrist and undergo counseling. (Tr. 284).

5

In January, February and March of 2004, Claimant attended behavioral counseling. She was diagnosed with Major Depressive Disorder and Mild Mental Retardation with a GAF of 60. (Tr. 225, 231, 234). In an evaluation accomplished in February of 2004, Claimant was diagnosed with Borderline I.Q. (Tr. 233).

Because Claimant was having social and emotional problems and had difficulty staying in school, Claimant was brought into school in September of 2005 with a reduced schedule. An Individualized Education Program was prepared for her. (Tr. 287). Claimant was to have Mr. Dennis Smith as a special education teacher. (Tr. 292).

On July 18, 2006, Mr. Smith prepared a Teacher Questionnaire on Claimant. He estimated Claimant was functioning in reading at a grade 5.4, math at a grade level 5.7 and written language at a grade level of 5.5, despite the fact she was enrolled in the 12th grade. (Tr. 163). He found Claimant had a serious problem comprehending and doing math problems and expressing ideas in written form. (Tr. 164). She also demonstrated a serious problem with focusing long enough to finish assigned activity or task, refocusing to task when necessary, and carrying out single-step instructions. She showed a very serious problem with carrying out multi-step instructions. (Tr. 165). Claimant also had a serious problem with interacting with others and a very serious problem

6

with expressing anger appropriately and respecting/obeying adults in authority. (Tr. 166). Mr. Smith found Claimant had a serious problem with handling frustration appropriately, being patient when necessary, using good judgment regarding personal safety and dangerous circumstances, responding appropriately to changes in own mood, and knowing when to ask for help. She had a very serious problem with using appropriate coping skills to meet daily demands of school environment. (Tr. 168).

On August 31, 2006, Dr. Cynthia Kampschaefer attempted to test Claimant for the Social Security Administration. However, insufficient information existed for Dr. Kampschaefer to assess the severity of Claimant's mental retardation. (Tr. 175, 187).

In September and October of 2006, Claimant underwent final testing in school prior to graduation. Her intellectual functioning was rated in the low range and her reading level was rated as very low. (Tr. 122). Her I.Q. score was 70-75, which represented the bottom 3 percentile in her age group. (Tr. 123). Her reading level and oral language level were rated at the second and third grade level. (Tr. 126).

On March 21, 2007, Claimant was seen by Dr. Annette Miles for an intellectual assessment. Although Claimant was initially cooperative, she became increasingly lethargic as the test

7

progressed and during the final subtest fell asleep while being asked a question. The test results were not considered valid and representative of Claimant's current level of intellectual functioning. Her scores were provided by Dr. Miles for informational purposes only and were designated as not to be used as an actual score of intellectual functioning. (Tr. 195).

In her decision, the ALJ found Claimant suffered from the severe impairments of borderline intellectual functioning, learning disorder, and attention deficit hyperactivity disorder. (Tr. 13). However, she also concluded Claimant could function at all exertional levels with certain non-exertional limitations. (Tr. 19).

Claimant contends the ALJ should have developed evidence from "acceptable medical sources" as to the nature and severity of Claimant's mental impairments since there is a dearth of such information in the record as it stood before the ALJ. Such is the requirement of the regulations. 20 C.F.R. § 416.913(a); 20 C.F.R § 404.1513(a). Among those considered "acceptable medical sources" are licensed or certified psychologists, including "school psychologists, or other licensed or certified individuals with other titles who perform the sam function as a school psychologist in a school setting, for purposes of establishing mental

8

retardation, learning disabilities, and borderline intellectual functioning only." Soc. Sec. R. 06-03p.

Given the fact that no testing was completed by either agency sources, consultative sources, or medical professionals, the ALJ should have considered the report of Donna Wimmer-Stevens before assessing the severity of Claimant's mental impairments. Additionally, since a real question exists as to Claimant's ability to function due to her many mental and emotional problems, the ALJ should consider ordering another consultative mental evaluation in order to further explore the severity of Claimant's impairment.

Generally, the burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability. Branam v. Barnhart, 385 F.3d 1268, 1271 (10th Cir. 2004) citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987). A social security disability hearing is nonadversarial, however, and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." Id. quoting Henrie v. United States Dep't of Health & Human Services, 13 F.3d 359, 360-61 (10th Cir. 1993). As a result, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention

during the course of the hearing." Id. quoting Carter v. Chater, 73 F.3d 1019, 1022 (10th Cir. 1996). This duty exists even when a claimant is represented by counsel. Baca v. Dept. of Health & Human Services, 5 F.3d 476, 480 (10th Cir. 1993). On remand, the ALJ shall develop the record further as indicated in this opinion.

**RFC Assessment**

Claimant also contends the ALJ's RFC evaluation was flawed because she failed to consider Ms. Wimmer-Stevens' report and gave Mr. Smith's assessment the evidentiary value of an acceptable medical source. On remand, the ALJ shall re-evaluate his RFC assessment in light of the additional evidence considered and developed.

**Conclusion**

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to

the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 24th day of August, 2010.

*[signature]*
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE